OSCN Found Document:STATE ex rel. OKLAHOMA BAR ASSOCIATION v. WINTORY

 
 
 

 
 
 
 
 
 
 
 

 


 
 
 
 
 
 


 
 OSCN navigation


 
 
 Home

 
 Courts

 
 Court Dockets

 
 Legal Research

 
 Calendar

 
 Help
 
 





 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 
 
 

 
 
 
 STATE ex rel. OKLAHOMA BAR ASSOCIATION v. WINTORY
2014 OK 113
Case Number: SCBD-6119
Decided: 12/16/2014
IN THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2014 OK 113, __ P.3d __

 
NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

State of Oklahoma ex rel. Oklahoma Bar Association, Petitioner,
v.
Richard M. Wintory, Respondent.

ORIGINAL PROCEEDING FOR ATTORNEY DISCIPLINE

¶0 Complainant, Oklahoma Bar Association (Bar Association) brought a disciplinary proceeding pursuant to Rule 7.7, Rules Governing Disciplinary Proceedings, 5 O.S. 2011, Ch. 1, App. 1-A, following notification that the respondent, Richard M. Wintory (attorney/Wintory), had been suspended in Arizona for ninety (90) days and ordered to pay costs. The agreed discipline imposed arose from Wintory's communication, as a prosecutorial officer, with a confidential intermediary for the defense in a murder trial and his lack of candor concerning the extent, content, and tenor of those discussions. The attorney did not notify timely the General Counsel of the discipline imposed. Although the attorney was given notice of the instant proceedings, Wintory has not responded or challenged the imposition of discipline by this Court. Therefore, pursuant to Rule 7, the documents provided by the Arizona Court constitute the charge and prima facia evidence that the attorney committed the acts described therein. The uncontroverted evidence demonstrates that the respondent: on multiple occasions had contact with an individual recommended as an aide to the defense in a capital murder case; misled the defense, his supervisor, his co-counsel, and the trial court concerning the extent of his contact with the individual; "conveniently" remembered there had been a witness to the one reported conversation only after affidavits were filed with the trial court which did not mention this development; and did not timely report the discipline imposed in the reciprocal jurisdiction to this Court. Upon de novo review, we hold that, under the facts presented along with discipline imposed for similar acts both in Oklahoma and in other jurisdictions, the attorney's misconduct warrants a suspension of two years and one day from the practice of law in the State of Oklahoma.

RESPONDENT SUSPENDED FOR TWO YEARS AND ONE DAY
FROM THE EFFECTIVE DATE OF THIS OPINION.

WATT, J.:

¶1 The attorney is before this Court for disciplinary proceedings arising under Rule 7.2, Rules Governing Disciplinary Proceedings, 5 O.S. 2011, Ch. 1, App. 1-A governing imposition of reciprocal discipline for professional misconduct occurring in another state.[1] The State Bar of Arizona and Wintory entered an agreement for discipline by consent by which the attorney was suspended from the practice of law for ninety (90) days and ordered to pay the costs of the proceeding.

¶2 There is no question that the attorney misled the defense, his co-counsel, his supervisor in the Arizona Attorney General's Office, and the trial court when he failed to reveal multiple conversations with a confidential intermediary appointed for the purpose of aiding defense counsel in uncovering evidence of mitigation. Those representations were not merely oral but extended to the filing of false and misleading affidavits in the trial court and causing his supervisor and co-worker to do the same with the end result being the filing of a motion to disqualify the Attorney General's office in its entirety from participating in the capital murder prosecution. Finally, Wintory did not timely notify the Bar Association the discipline imposed by the Arizona Supreme Court.

¶3 Upon de novo review,[2] we determine that the respondent's misconduct warrants a suspension of two years and one day from the practice of law in the State of Oklahoma. In considering the appropriate discipline, this Court considers the facts presented along with discipline imposed for similar acts[3] both in Oklahoma and in other jurisdictions.

UNCONTROVERTED FACTS AND PROCEDURE

¶4 The facts surrounding the Arizona discipline arose from a murder trial in which the respondent, an Assistant Attorney General, was acting as prosecutor. The trial judge ordered the appointment of a confidential intermediary for the purpose of uncovering evidence that might serve as mitigation of any sentence imposed. Following a disagreement between the confidential intermediary and the defense attorney, the intermediary contacted Wintory. After becoming aware of what eventually revealed multiple conversations between Wintory and the confidential intermediary, the defense filed a motion to recuse both Wintory, an Assistant Attorney General, and the Attorney General's Office from prosecuting the case.

¶5 Wintory was not candid with his co-counsel in the Attorney General's Office charged with responding to the motion to recuse. Believing that the only pertinent issue should be whether any confidential information was exchanged, the respondent led his co-counsel to believe that only one conversation had taken place when there had been multiple conversations, some of which were of considerable length, i.e. approximately twenty (20) minutes.

¶6 Initially, Wintory did not recall that there had been a witness to the first telephone conversation. On September 22, 2011, a joint response was filed with the trial court, signed by Wintory and his co-counsel, providing that only one conversation had taken place. The next day, Wintory met with his supervisor. Wintory prepared and signed an affidavit in which he did not mention that there had been multiple conversations with the confidential intermediary.

¶7 On October 3, 2011, Wintory "recalled" that there actually had been a witness, his paralegal, to the one conversation he revealed to the trial court and to his colleagues. This resulted in the paralegal, the alleged witness, preparing an affidavit averring to the same. Evidently, the paralegal believed that she witnessed the conversation because Wintory specifically asked that she do so.

¶8 Wintory was removed from the criminal case by his supervisor after the supervisor and the co-counsel realized it was necessary for them to advise the trial court that their fact presentations had not been accurate because of inadequate disclosures from the respondent. This resulted in a joint affidavit being filed by the supervisor and the co-counsel with the trial court, in which they averred that Wintory did not discuss having a witness to the single conversation revealed at any time prior to executing the affidavit. Wintory did eventually provide the trial court with details of a second conversation but did not inform his superiors, colleagues, or the trial court of his two longest phone conversations with the confidential intermediary.

¶9 The Attorney General's Office withdrew the allegation of capital murder. In January of 2013, the defendant pled guilty to second degree murder. The trial court accepted the plea specifically referencing "the apparent misconduct allegedly engaged in by the prior prosecutor in this matter."[4] The sentence was mitigated to eleven years in the penitentiary.

¶10 Wintory has not responsed to the notice that this matter was filed with the Office of the Chief Justice. The cause was assigned to these chambers on November 13, 2014.

JURISDICTION AND STANDARD OF REVIEW

¶11 Reciprocal discipline is controlled by Rule 7.7 of the Rules Governing Disciplinary Proceedings.[5] It directs the General Counsel for the Bar Association to submit to this Court a certified copy of a lawyer's adjudication of misconduct in the highest court of another state or federal court. The certified copy of the adjudication constitutes the charge against the lawyer in this Court and is prima facie evidence that the lawyer committed the acts of misconduct.

¶12 We stress that it is this Court's nondelegable, constitutional responsibility to regulate both the practice and the ethics, licensure, and discipline of the practitioners of the law. The duty is vested solely in this department of government.[6] Discipline is administered to preserve public confidence in the bar. Our responsibility is not to punish but to inquire into and gauge a lawyer's continued fitness to practice law, with a view to safeguarding the interest of the public, of the courts, and of the legal profession. Discipline is imposed to maintain these goals rather than as punishment for the lawyer's misconduct.[7] Disciplinary action is also administered to deter the attorney from similar future conduct and to act as a restraining vehicle on others who might consider committing similar acts.[8] Discipline is fashioned to coincide with the discipline imposed upon other lawyers for similar acts of professional misconduct.[9] Although this Court strives to be evenhanded and fair in disciplinary matters, discipline must be decided on a case-by-case basis because each situation involves unique transgressions and mitigating factors.[10]

¶13 We review the evidence de novo[11] to determine if the allegations of misconduct are established by clear and convincing evidence.[12] In a reciprocal disciplinary proceeding, it is within this Court's discretion to impose the same discipline as that in the other jurisdiction or one of greater or lesser severity.[13]

¶14 THE UNCONTROVERTED EVIDENCE IS THAT THE ATTORNEY:
ON MULTIPLE OCCASIONS HAD CONTACT WITH AN
INDIVIDUAL RECOMMENDED AS AN AIDE TO THE DEFENSE
IN A MURDER TRIAL WHERE THE DEATH PENALTY WAS SOUGHT;
MISLED THE DEFENSE, HIS SUPERVISOR, HIS
CO-COUNSEL, AND THE TRIAL COURT CONCERNING THE
EXTENT OF HIS CONTACT WITH THE INDIVIDUAL;
"CONVENIENTLY" REMEMBERED THERE HAD BEEN
A WITNESS TO THE ONE REPORTED CONVERSATION
ONLY AFTER AFFIDAVITS WERE FILED WITH THE TRIAL
COURT WHICH DID NOT MENTION THIS DEVELOPMENT;
AND DID NOT TIMELY REPORT THE DISCIPLINE IMPOSED
IN THE RECIPROCAL JURISDICTION TO THIS COURT.
THESE ACTIONS SUPPORT THE IMPOSITION OF A TWO-YEAR
SUSPENSION FROM THE PRACTICE OF LAW IN OKLAHOMA. 

¶15 It is unquestioned that Wintory had multiple conversations with an individual appointed by the trial court for the purpose of aiding the defense in uncovering mitigating evidence which might be appropriate for consideration if the defendant was convicted. Those actions, in and of themselves, are questionable. Further, the respondent misled the defense, the trial court, his co-counsel, and supervisor as to whether there was a witness to the one conversation he admitted having and concerning the number of conversations actually occurring. His misrepresentations led to the filing of false affidavits with the trial court. We must now determine what discipline is appropriate for Wintory's actions.

¶16 In State of Oklahoma ex rel. Oklahoma Bar Ass'n v. Moss, 1983 OK 104, 682 P.2d 205, this Court imposed the extreme sanction of disbarment on an attorney for submitting a false affidavit to the Bar Association knowing of its falsity. Moss attempted to avoid discipline by paying money to a complaining client in exchange for the execution of a false affidavit intended to exonerate him in a disciplinary proceeding.

¶17 We addressed the appropriate discipline to be imposed in State ex rel. Oklahoma Bar Ass'n v. Askins, 1993 OK 78, 882 P.2d 1054 for an attorney having prepared and filed false documents in an attempt to aide the defense of his client. In that case, this Court found the appropriate discipline to be a two-year suspension from the practice of law. In so doing, we considered discipline imposed in other Oklahoma causes where misrepresentation and presentation of false statements to a court were at issue. In those cases, discipline ranged from suspensions of thirty (30) days to disbarment.[14]

¶18 Most recently, the majority of this Court determined that there had been no active or intentional deceit by a prosecuting attorney in not revealing discussions between herself and a defense witness. However, there is absolutely nothing in the documents submitted in this cause to indicate that Wintory was presented with the same pressures as was the respondent in State ex rel. Oklahoma Bar Ass'n v. Layton, 2014 OK 21, 324 P.3d 1244. In that case, the conversation took place within the chaos of a victim-witness center, the trial was very contentious and intense, the prosecutor was being verbally attacked by defense counsel in open court, and the defense counsel's staff was disparaging to the alleged victim. Here, Wintory's conversations with the confidential intermediary took place in the privacy of his office or in the comfort of his vehicle.

¶19 Discipline for actions similar to those of Wintory in this cause have received a wide range of discipline in other jurisdictions. Our sister courts have found that public censures were appropriate in some causes, moderate and lengthy suspensions in others, and the death knell of disbarment in the most serious causes.[15]

¶20 In determining the appropriate discipline to be imposed by this Court, we must also keep in mind that Wintory did not timely provide notice of the discipline imposed by the Arizona court[16] nor did he respond to notice of the filing of this matter for reciprocal discipline. Failure to provide the Bar Association with the proper notice may, in and of itself, warrant imposition of discipline.[17] Therefore, our do novo review of the matters presented, leads us to conclude that a two-year suspension from the practice of law in Oklahoma is appropriate for Wintory's actions in the Arizona criminal proceeding.

CONCLUSION

¶21 The respondent is a seasoned prosecutor. Not only does he serve in the Attorney General's Office in the State of Arizona, Wintory had a long-stint of service under Oklahoma County's District Attorney, Bob Macy. He teaches seminars on the duties of prosecutors, defense counsel, law enforcement, and judges on issues related to constitutional law.[18] There simply is no excuse for the respondent's failure to be completely honest in regard to his conversations with the confidential intermediary in the underlying criminal proceeding. His actions in this matter compromised the ability of the Arizona Attorney General's Office to prosecute an alleged murderer.

¶22 The respondent, Richard M. Wintory, is suspended from the practice of law in Oklahoma for two (2) years and one day. Such suspensions are tantamount to disbarment in that the suspended lawyer must follow the same procedures for readmittance as would a disbarred attorney.[19] No costs having been requested by the Bar Association, no reimbursement is imposed.

RESPONDENT SUSPENDED FOR TWO YEARS AND ONE DAY
FROM THE EFFECTIVE DATE OF THIS OPINION.

REIF, V.C.J., KAUGER, WATT, WINCHESTER, COMBS, JJ. - CONCUR

TAYLOR, J. - DISSENT

"I would disbar the Respondent."

COLBERT, C.J., EDMONDSON, GURICH, JJ. - NOT PARTICIPATING

FOOTNOTES

[1] Rule 7.7, Rules Governing Disciplinary Proceedings, 5 O.S. 2011, Ch. 1, App. 1-A providing in pertinent part:

"(a) It is the duty of a lawyer licensed in Oklahoma to notify the General Counsel whenever discipline for lawyer misconduct has been imposed upon him/her in another jurisdiction, within twenty (20) days of the final order of discipline, and failure to report shall itself be grounds for discipline.

(b) When a lawyer has been adjudged guilty of misconduct in a disciplinary proceeding, except contempt proceedings, by the highest court of another State or by a Federal Court, the General Counsel of the Oklahoma Bar Association may cause to be transmitted to the Chief Justice a certified copy of such adjudication and the Chief Justice shall direct the lawyer to appear before the Supreme Court at a time certain, not less than ten (10) days after mailing of notice, and show cause, if any he/she has, why he/she should not be disciplined. The documents shall constitute the charge and shall be prima facie evidence the lawyer committed the acts therein described. . . ."

[2] State ex rel. Oklahoma Bar Ass'n v. Kleinsmith, see note 17, infra; State ex rel. Oklahoma Bar Ass'n v. Wagnon, 2004 OK 78, ¶2, 104 P.3d 571; State ex rel. Oklahoma Bar Ass'n v. Patterson, see note 9, infra.

[3] State ex rel. Oklahoma Bar Ass'n v. Patterson, see note 9, infra; State ex rel. Oklahoma Bar Ass'n v. Eakin, 1995 OK 106, ¶0, 914 P.2d 644; State ex rel. Oklahoma Bar Ass'n v. Bolton, 1994 OK 53, ¶16, 880 P.2d 339.

[4] Agreement for Discipline By Consent, PDJ-2013-9089, ¶41 at p 11.

[5] Rule 7.7, Rules Governing Disciplinary Proceedings, see note 1, supra.

[6] State ex rel. Oklahoma Bar Ass'n v. Farrant, 1994 OK 13, 867 P.2d 1279; Tweedy v. Oklahoma Bar Ass'n, 1981 OK 12, ¶4, 624 P.2d 1049.

[7] State ex rel. Oklahoma Bar Ass'n v. Phillips, 2002 OK 86, ¶21, 60 P.3d 1030; State ex rel. Oklahoma Bar Ass'n v. Bedford, see note 8, infra; State ex rel. Oklahoma Bar Ass'n v. English, 1993 OK 68, ¶12, 853 P.2d 173; State ex rel. Oklahoma Bar Ass'n v. Raskin, 1982 OK 39, ¶17, 642 P.2d 262.

[8] State ex rel. Oklahoma Bar Ass'n v. Bedford, 1997 ok 83, ¶18, 956 P.2d 148; State ex rel. Oklahoma Bar Ass'n v. Badger, 1995 OK 113, ¶13, 912 P.2d 312; State ex rel. Oklahoma Bar Ass'n v. Hall, 1977 OK 117, ¶12, 567 P.2d 975.

[9] State ex rel. Oklahoma Bar Ass'n v. Patterson, 2001 OK 51, ¶29, 28 P.3d 551; State ex rel. Oklahoma Bar Ass'n v. Eakin, 1995 OK 106, ¶0, 914 P.2d 644; State ex rel. Oklahoma Bar Ass'n v. Bolton, 1994 OK 53, ¶16, 880 P.2d 339.

[10] State ex rel. Oklahoma Bar Ass'n v. Doris, 1999 OK 94, ¶38, 991 P.2d 1015; State ex rel. Oklahoma Bar Ass'n v. Rozin, 1991 OK 132, ¶10, 824 P.2d 1127.

[11] State ex rel. Oklahoma Bar Ass'n v. Garrett, 2005 OK 91, ¶3, 127 P.3d 600; State ex rel. Oklahoma Bar Ass'n v. Anderson, 2005 OK 9, ¶15, 109 P.3d 326; State ex rel. Oklahoma Bar Ass'n v. Hummel, 2004 OK 30, ¶16, 89 P.3d 1105.

[12] State ex rel. Oklahoma Bar Ass'n v. Funk, 2005 OK 26, ¶3, 114 P.3d 427; State ex rel. Oklahoma Bar Ass'n v. Kessler, 1995 OK 32, ¶23, 895 P.2d 713; State ex rel. Oklahoma Bar Ass'n v. Downing, 1993 OK 44, ¶15, 863 P.2d 1111.

[13] State ex rel. Oklahoma Bar Ass'n v. Kleinsmith, 2013 OK 16, ¶4, 297 P.3d 1248; State ex rel. Oklahoma Bar Ass'n v. Patterson, see note 9, supra.

[14] State ex rel. Oklahoma Bar Ass'n v. Herlihy, 1991 OK 123, 827 P.2d 164 [Disbarment.]; State ex rel. Oklahoma Bar Ass'n v. Downing, see note 12, supra [Four-year suspension.]; State ex rel. Oklahoma Bar Ass'n v. Hall, see note 8, supra [Suspended for one year.]; State ex rel. Oklahoma Bar Ass'n v. Stubblefield, 1988 OK 141, 766 P.2d 979; State ex rel. Oklahoma Bar Ass'n v. Moore, 1987 OK 21, 741 P.2d 445 [Disbarment.]; State ex rel. Oklahoma Bar Ass'n v. Hensley, 1983 OK 32, 661 P.2d 527 [Disbarment.]; State ex rel. Oklahoma Bar Ass'n v. Peveto, 1980 OK 182, 620 P.2d 392 [One-year suspension.].

[15] Matter of Colvin, 336 P.3d 823 (Kan. 2014), 2014 WL 5304963 [Filing frivolous appearance and failing to correct false statement in affidavit warranted 45-day suspension]; Board of Professional Responsibility, Wyoming State Bar v. Richard, 2014 WY 98, 335 P.3d 1036 [Multiple count disciplinary proceeding including false assertions in attorney-affidavit warranted 3-year suspension.]; Attorney Grievance Comm'n of Maryland v. Sperling, 432 Md. 471, 69 A.3d 478 (2013) [Affidavit submitted by attorney containing false statements along with other misconduct warranted indefinite suspension from the practice of law.]; Matter of Chavez, 2013 NMSC 008, 299 P.3d 403 [Failing to correct statements known to be false in an affidavit and to represent clients competently warranted suspension from the practice of law for one year.]; Disciplinary Action against Ulanowski, 800 N.W.2d 785 (Minn. 2011) [Indefinite suspension from practice of law with no right to petition for reinstatement for minimum of one year appropriate sanction for filing false affidavits in district court.]; Iowa Supreme Court Disciplinary Board v. Bowles, 794 N.W.2d 1 (Iowa 2011) [ Knowingly facilitating preparation of false affidavit and then relying on same warranted 18-month suspension.]; Disciplinary Action against Garcia, 792 N.W.2d 434 (Minn. 2010) [Attorney committing multiple acts of misconduct, including coercing a client to sign a false affidavit warranted disbarment.]; Matter of Sniadecki, 924 N.E.2d 109 (Ind. 2010) (Ind. 2010) [Multiple shortcomings in application for reinstatement, including filing of a false compliance affidavit with the Supreme Court warranted disbarment.]; Lawyer Disciplinary Board v. Smoot, 228 W.Va. 1, 716 S.E.2d 491 (2010), cert. denied, ___ U.S. ___, 132 S.Ct. 94, 181 L.Ed.2d 23 (2011) [Attempt to deceive an administrative tribunal resulted in one-year suspension.]; In re Budnick, 67 A.D.3d 99, 886 N.Y.S.2d 700 (2009) [Knowingly filing false instrument with county clerk warranted two-year suspension.]; Matter of Shaw, 427 Mass. 764, 696 N.E.2d 126 (1998) [Two-year suspension imposed for knowingly testifying falsely and filing a false affidavit.]; Matter of Goffe, 209 A.D.2d 124, 624 N.Y.S.2d 592 (1995) [Recognizing attorney disbarred for forging documents or submitting false affidavits.]; Matter of Olsen, 180 Ariz. 5, 881 P.2d 337 (1994) [Disbarment imposed for submitting false affidavits.]; In re Karpin, 162 Vt. 163, 647 A.2d 700 (1993) [Attorney disbarred for submitting false affadivit in effort to shift blame to others while taking a case with considerable conflicts.]; Florida Bar v. Kleinfeld, 648 So.2d 698 (Fla. 1994) [Imposing 3-year suspension for making false statement in affidavit seeking disqualification of judge.]; Louisiana State Bar Ass'n v. Boutall, 597 So.2d 444 (La. 1992) [Attorney's executing false affidavit warrants 18-month suspension.]; In re Hawkins, 305 Or. 319, 751 P.2d 780 (1988) [Two-year suspension for preparing and filing false documents with court, using false evidence, and filing false affidavit.]; Matter of Reiss, 101 N.J. 475, 502 A.2d 560 (1986) [Self-serving actions in business venture and filing a false affidavit with the court resulted in a one-year suspension.]. See, especially, Chicago Bar Ass'n v. Martin, 288 Ill. 615, 124 N.E. 340, 14 A.L.R. 854 (1919) [Attorney disbarred for having knowingly made a false affidavit.] This case was cited as instructive in State ex rel. Oklahoma Bar Ass'n v. O'Bryan, 1963 OK 151, 385 P.2d 876, appeal dismissed, cert. denied, 376 U.S. 649, 84 S.Ct. 983, 11 L.Ed.2d 980 (1964), in which this Court disbarred the attorney for dishonest behavior.

[16] Rule 7.7(a), Rules Governing Disciplinary Proceedings, see note 1, supra, required Wintory to notify the Bar Association of his discipline in Mexico within twenty (20) days of entry of the final order of discipline. The Final Judgment and Order for discipline was entered on February 28, 2014. The Amended Final Judgment and Order was entered on March 5, 2014. Giving the attorney every benefit of the doubt, notice from Wintory was due in the Bar Association's Office, at the latest, on March 25th. No notification was given until March 31st.

[17] State ex rel. Oklahoma Bar Ass'n v. Kleinsmith, see note 13, supra; State of Oklahoma ex rel. Oklahoma Bar Ass'n v. Patterson, see note 9, supra.

[18] Agreement for Discipline by Consent, PDJ-2013-9089, at p. 17.

[19] State ex rel. Oklahoma Bar Ass'n v. Townsend, 2012 OK 44, ¶32, 277 P.3d 1269.






 Citationizer© Summary of Documents Citing This Document
 
 
 Cite
 Name
 Level
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 Cite
 Name
 Level
 
 
 Oklahoma Supreme Court Cases
 Cite
Name
Level

 1987 OK 21, 741 P.2d 445, State ex rel. Oklahoma Bar Ass'n v. Moore
Discussed
 1988 OK 141, 766 P.2d 979, State ex rel. Oklahoma Bar Ass'n v. Stubblefield
Discussed
 1991 OK 123, 827 P.2d 164, 62 OBJ 3589, State ex rel. Oklahoma Bar Ass'n v. Herlihy
Discussed
 1991 OK 132, 824 P.2d 1127, 62 OBJ 3769, State ex rel. Oklahoma Bar Ass'n v. Rozin
Discussed
 1993 OK 44, 863 P.2d 1111, 64 OBJ 1193, State ex rel. Oklahoma Bar Ass'n v. Downing
Discussed
 1993 OK 68, 853 P.2d 173, 64 OBJ 1560, State ex rel. Oklahoma Bar Ass'n v. English
Discussed
 1993 OK 78, 882 P.2d 1054, 64 OBJ 1853, State ex rel. Oklahoma Bar Ass'n v. Askins
Discussed
 1994 OK 13, 867 P.2d 1279, 65 OBJ 459, State ex rel. Oklahoma Bar Assn. v. Farrant
Discussed
 1994 OK 53, 880 P.2d 339, 65 OBJ 1862, State ex rel. Oklahoma Bar Assn. v. Bolton
Discussed at Length
 1997 OK 83, 956 P.2d 148, 68 OBJ 2473, State ex rel. Oklahoma Bar Ass'n v. Bedford
Discussed
 2001 OK 51, 28 P.3d 551, 72 OBJ 1921, STATE ex. rel. OKLAHOMA BAR ASSN. v. PATTERSON
Discussed
 1963 OK 151, 385 P.2d 876, STATE v. O'BRYAN
Discussed
 1995 OK 32, 895 P.2d 713, 66 OBJ 1244, State ex rel. Oklahoma Bar Assn. v. Kessler
Discussed
 1995 OK 106, 914 P.2d 644, 66 OBJ 3187, State ex rel. Oklahoma Bar Assn. v. Eakin
Discussed at Length
 1995 OK 113, 912 P.2d 312, 66 OBJ 3277, State ex rel. Oklahoma Bar Assn. v. Badger
Discussed
 2002 OK 86, 60 P.3d 1030, STATE ex. rel. OKLAHOMA BAR ASSN. v. PHILLIPS
Discussed
 2004 OK 30, 89 P.3d 1105, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. HUMMEL
Discussed
 2004 OK 78, 104 P.3d 571, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. WAGNON
Discussed
 2005 OK 9, 109 P.3d 326, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. ANDERSON
Discussed
 2005 OK 26, 114 P.3d 427, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. FUNK
Discussed
 2005 OK 91, 127 P.3d 600, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. GARRETT
Discussed
 2012 OK 44, 277 P.3d 1269, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. TOWNSEND
Discussed
 2013 OK 16, 297 P.3d 1248, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. KLEINSMITH
Discussed
 2014 OK 21, 324 P.3d 1244, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. LAYTON
Discussed
 1977 OK 117, 567 P.2d 975, STATE EX REL. OKL. BAR ASS'N v. HALL
Discussed
 1980 OK 182, 620 P.2d 392, State ex rel. Oklahoma Bar Ass'n v. Peveto
Discussed
 1999 OK 94, 991 P.2d 1015, 70 OBJ 3622, State ex. rel. Oklahoma Bar Association v. Doris
Discussed
 1981 OK 12, 624 P.2d 1049, Tweedy v. Oklahoma Bar Ass'n
Discussed
 1982 OK 39, 642 P.2d 262, State, ex rel., Oklahoma Bar Ass'n v. Raskin
Discussed
 1983 OK 32, 661 P.2d 527, State ex rel. Oklahoma Bar Ass'n v. Hensley
Discussed
 1983 OK 104, 682 P.2d 205, State ex rel. Oklahoma Bar Ass'n v. Moss
Discussed